IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GLENN A. RITTS,

      Plaintiff,

  v.

MICHEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

07cv0858
**ELECTRONICALLY FILED**

## MEMORANDUM OPINION

December 14, 2007

    **I.**      **Introduction**

Plaintiff Glenn A. Ritts ("Plaintiff" or "Ritts") brings this action pursuant to 42 U.S. C. §§ 405(g) and 1383(c)(3) seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits (DIB) and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("SSA"). 42 U.S.C. §§ 401-403, 1381-1383f.

After careful consideration of the decision of the Administrative Law Judge ("ALJ"), the parties' briefs, and the entire record, the Court finds that substantial evidence supports the Commissioner's decision. Therefore, plaintiff's motion for summary judgment will denied, defendant's cross motion for summary judgment will be granted, and judgment will be entered accordingly.

## II.     Procedural History

Plaintiff filed for DIB and SSI on March 3, 2004, asserting disability since November 30, 2001, due to depression, anxiety, and knee and back problems. R. 49-51, 83, 320-324. The state agency initially denied plaintiff's applications.[1]

On February 15, 2006, ALJ William E. Kenworthy held a hearing at plaintiff's request. Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE"). On March 8, 2006, the ALJ issued a decision denying plaintiff's claims in which he found that plaintiff could perform a range of sedentary work with a stand/sit option at thirty minute intervals that consisted of simple, repetitive tasks that did not require dealing with the general public, close cooperation with co-workers, or independent decision making or similar sources of work stress. R. 20-21.

On May 23, 2007, the Appeals Council denied plaintiff's request for review of the ALJ's decision, making that decision the final order of the Commissioner. Plaintiff then filed the instant action. The matter is now before this Court on cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## III.     Statement of the Case

Plaintiff, who was born on December 19, 1957, was 43 years old at the onset of the alleged disabilities. R. 21. Plaintiff has a high school education and completed a vocational program in automotive repair. R. 88-89.[2] The VE testified that plaintiff's twenty-six years as a

---

[1] The decision was made pursuant to a test program in which there is no reconsideration of the Agency's initial determination.

[2] During these education programs, was not placed in special education classes. R. 89.

street sweeper classified his occupation as semi-skilled, heavy work. In this position, plaintiff testified that he had a commercial driver's license and supervised a few people. R. 85, 341.

From February 2003 to January 2004, Michael Jurenovich, D.O. ("Dr. Jurenovich"), an orthopedic surgeon, treated plaintiff for various physical ailments. R. 188-211. Specifically, in June 2003, Dr. Jurenovich performed arthroscopic surgery on plaintiff's right knee after an MRI revealed a tear of plaintiff's medial meniscus. R. 165, 201-202. A subsequent MRI of the lumbar spine in August 2003, revealed a herniated disc at L5-S1 and mild spondylotic changes. R. 163.

During a follow up visit in September 2003, plaintiff reported some knee and back pain but felt he could carry out light work. Dr. Juernovich recommended physical therapy, administered epidural injections into plaintiff's lunbar spine, and prescribed Soma and Percocet, respectively, a muscle relaxant and narcotic analgesic. R. 105-36, 188-211.

In August 2003, plaintiff sought mental health treatment from Ronald McFadden, M.D. ("Dr. McFadden"), a psychiatrist. Dr. McFadden diagnosed plaintiff with depression and anxiety and recommended several anti-depressant and anti-anxiety medications. R. 226.

During an appointment in February 2004, plaintiff informed Dr. McFadden that he was "doing fairly well." R. 221. At this juncture, Dr. McFadden also administered a mental status exam in which he found plaintiff to be alert, calm, and fully oriented. R. 221.[3]

On February 2, 2004, plaintiff was fired from his job as a street sweeper after he was accused of wrecking a work truck. R. 340-341. He alleges a police officer coerced him into signing a confession accepting responsibility damaging the truck. Plaintiff, subsequently filed a

_____

[3] From April 2004 till October 2005, Dr. McFadden treated plaintiff with medications, during which time plaintiff continued to report depression and anxiety but that his symptoms sometimes improved after taking medication.

grievance to get his job back, as well as a wrongful discharge lawsuit. Plaintiff was unsuccessful in both actions.

A month later, plaintiff returned to Dr. Jurenovich with back complaints. During his evaluation, Dr. Jurenovich observed pain, stiffness, and a limited range of motion in the lumbar spine. R. 185-186. Therefore, Dr. Jurenovich refilled plaintiff's medical prescriptions. Throughout 2004, Dr. Jurenovich treated plaintiff with medication as he continued to observe pain, stiffness, weakness, and a limited range of motion in plaintiff's lumbar spine.[4] R. 278-293.

On March 3, 2004, plaintiff applied for DIB and SSI pursuant to the SSA. In his disability paperwork, plaintiff stated his condition did not require him to depend on someone else for care, except for putting on socks and tying his shoes. R. 71. He also stated that he did not drive a car often, cannot mow his lawn, engage in general yard work or make home repairs because of back and knee pain. He alleged that these ailments mandated frequent rest when he engaged in physical activities. R. 72.

On May 26, 2004, as a result of plaintiff's disability claims, Julie Uran, Ph.D., ("Dr. Uran") evaluated plaintiff's mental capacity on behalf of the SSA. She administered a mental status examination in which she observed plaintiff's mood as restricted and blocked, with a flat affect, and that he appeared to be guarded and/or suspicious of others. R. 236-237. She found that his statements reflected low self esteem, worthlessness, and plaintiff admitted feelings of unresolved guilt. Dr. Uran also found no evidence of disturbance in plaintiff's thought process or neural sensory distortions. R. 236. During the evaluation, plaintiff denied any hallucinations,

---

[4] Between January and November 2005, Dr. Jurenovich continued to treat plaintiff's back and leg pain with medication and epidural injections.

delusions, or suicidal ideations; had no difficulty recalling childhood experiences or recent events; demonstrated an adequate fund of vocabulary knowledge; but could not identify the president during the Civil War or interpret a proverb. He was also was unable to perform serial subtractions from one hundred and mental computation of 4 X 9. R. 236-237. Given the general assessment, Dr. Uran opined that plaintiff likely had below-average to borderline intelligence. *Id.* While she found plaintiff's social judgment appropriate for his age, mental abilities, and experiences, she found that he had a limited capacity to gain insight or learn from experience. Overall, she diagnosed plaintiff with anxiety and depressive disorders; as suffering from back pain, diabetes, and arthritis; having a below average IQ; and assigned him a GAF score of 55.[5] R. 238.

On May 31, 2004, also in connection with plaintiff's disability claim, C. James Poolos, M.D., ("Dr. Poolos") examined plaintiff's physical status at the SSA's request. Dr. Poolos observed percussion tenderness throughout plaintiff's lumbar spine and right knee. R. 246. He also found that plaintiff had a limited range of motion in his lumbar spine with flexion-extension and no range of motion in his right knee with flexion-extension.[6] R. 249.

---

[5] The Global Assessment of Functioning (GAF) scale, which was devised by the American Psychiatric Association, consider a person's psychological, social, and occupational function on a hypothetical continuum of mental health. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32. The GAF scale is divided into 10 ranges of functioning, in which the selected scale represents the individuals's overall level of functioning. *See Id.* Two components comprise each 10-point range: "the first part covers symptom severity, and the second part covers functioning." *Id.* A GAF of 51-60 indicates an individual has moderate symptoms (i.e. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school function (i.e. few friends, conflicts with peers or co-workers). *Id* at 34.

[6] Dr. Poolos medical findings were consistent with Dr. Jurenovich's conclusions.

On July 16, 2004, after conducting a paper review of the documentary evidence on behalf of the SSA, Manella Link, Ph.D. ("Dr. Link") opined that plaintiff had severe mental impairments resulting from depression and anxiety R. 250-255.[7] With respect to the 12.04 and 12.06 "B" criteria, Dr. Link concluded that plaintiff had mild limitations in the restriction of daily living activities, moderate limitations in difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. R. 260. Dr. Link also opined that plaintiff did not satisfy the 12.04 and 12.06 "C" criteria. R. 261. Based on the medical evidence in plaintiff's record, Dr. Link found plaintiff's statements only partially credible and did not assign full weight to Dr. Uran's opinion. R.265. He reasoned that it was inconsistent with the totality of the medical evidence and overestimated the severity of plaintiff's functional restrictions.[8] R. 265. Dr. Link finally concluded that plaintiff is able to meet the basic mental demands of competitive work on a sustained basis, despite the limitations resulting from his impairments. R. 265.

On May 24, 2005, Dr. Uran, administered a Wechsler Adult Intelligence Scale- Third Edition ("WAIS-III"). According to Dr. Uran, the WAIS III approximated plaintiff's intellectual capability at a very low range. Plaintiff received a verbal score of 69 (2nd percentile), a performance score of 74 (4th percentile), and a full scale score of 69 (2nd percentile ). R. 228. In her summary of medical findings, Dr. Uran concluded that plaintiff suffers from "physical-based

[7] This finding supports the conclusion that plaintiff satisfied 12.06(a), which is identical 12.04(a).

[8] Dr. Link specifically concluded that Dr. Uran's opinion regarding plaintiffs abilities to make occupational adjustments, performance adjustments, personal and social adjustments, and other work related activities were not consistent with all of the medical and non-medical evidence in the claim's folder. R. 265.

difficulties and resulting emotional distress," exhibits poor academic skills and limited

vocational potential, suffers from moderate depression, has poor levels of personality adjustment,

and that the overall assessment is indicative of an individual with below average intelligence. R.

230. Therefore, Dr. Uran diagnosed plaintiff with a depression and anxiety disorder, borderline

intellectual function, as a serious stressor, and assigned him a GAF score of 50.[9] R. 231. She also

concluded that he did not appear to be a candidate for vocational rehabilitation and recommended

Social Security Disability. R. 230.

On July 13, 2005, plaintiff again treated with Dr. McFadden for psychiatric care. At this

time, plaintiff stated that "overall he feels fine and is doing well." R. 272. He also stated that he

continues to lose his temper once a day, but that he has been active outside, mowing

approximately three acres a week. In his treatment notes, Dr. McFadden stated that plaintiff's

anxiety seemed to be fairly well controlled since be began taking the antidepressant Gabitril. R.

272.

On October 12, 2005, plaintiff met with Dr. McFadden again. At this appointment, Dr.

McFadden noted that plaintiff was generally not doing well. Plaintiff reported feeling angry,

irritable, fatigued, and unable to engage in many activities. R. 272.

On February 15, 2006, the ALJ held a hearing at plaintiff's request. At the hearing,

plaintiff testified that his back and knee pain limited him to sitting for 20 to 30 minutes, standing

for 20 minutes, walking for less than a block at a slow pace, and required him to lie down two to

---

[9] A GAF score of 50 indicates the individual has serious symptoms or any serious impairments in social, occupational, or school functioning. A GAF of 50 borders on the next 10-point range which represents moderate symptom levels. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34.

three times a day for half an hour to an hour, at a time; he can not sit or stand very long, and if he sits too long he must lie down for a period of time; that he wears a back and leg brace, and his back pain carries into his right leg, causing it to periodically give out; his depression, back and knee pain restrict his ability to participate in activities such as reading a newspaper, watching television or visiting friends; that a couple days ever month his depression prevents him from leaving his house; as a result of his depression he avoids human contact and sleeps a lot; after a work-related accident in February 2004, he did not return to work until February 2004 at which time his work was modified; and he can no longer participate in hunting, four wheeling, or going to the movie theaters. R. 314-343.

Based on the opinions of the treating medical experts, plaintiff's subjective complaints, and objective medical evidence, the ALJ concluded that plaintiff had severe impairments that did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ also concluded that plaintiff had the residual functional capacity to perform tasks at the sedentary exertional level, remaining seated most of the workday and lifting no more than 10 pounds occasionally, with a sit/stand option at intervals of about one half hour; and that plaintiff can perform simple, repetitive tasks, but could not perform tasks that require dealing with the general public, maintaining close cooperation with co-workers, independent decision making or similar sources of work stress. With respect to plaintiff's age, education, past work experience and residual functional capacity, the ALJ asked the VE whether jobs existed in the national economy for such an individual. The VE responded that such an individual could perform jobs as a hand packager (40,000 jobs nationally), sorter/grader (132,000 jobs nationally), or assembler (160,000 jobs nationally). R. 360-301. His testimony was consistent with the

Dictionary of Occupational Titles ("DOT").

On March 8, 2006, after careful consideration of the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 416.920(b)).

3. The claimant has the following severe impairments: Depression, anxiety disorder, diabetes, mellitus, degenerative disc disease, obesity, residual effects of torn medial meniscus of the right knee and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform tasks at the sedentary exertional level, remaining seated most of the workday and lifting no more than 10 pounds occasionally, with a sit/stand option at intervals of about one half hour. Claimant can perform simple, repetitive tasks, but could not perform tasks that require dealing with the general public, maintaining close cooperation with co-workers, independent decision making or similar sources fo work stress.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 19, 1957 and was 43 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 CFR 404.1563 and 416.963). He is now age 48, defined as a younger individual age 45-49.

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR 404.1560©), 404.1566, 416.960©, and 416.966.

11. The claimant has not been under a "disability," as defined in the Social Security Act, from November 30, 2001 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

DECISION

Based on the application for a period of disability and disability insurance benefits protectively filed on March 3, 2004, the claimant is not disabled under sections 216(I) and 223 (d) of the Social Security Act.

Based on the application for supplemental security income protectively filed March 3, 2004, the claimant is not disabled under section 1624(a)(3)(A) of the Social Security Act.

R.13-23.

## IV.    Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[10] and 1383(c)(3).[11] Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance

---

[10] Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .
42 U.S.C. § 405(g).

[11] Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

Benefits), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

        Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, as a whole, contains substantial evidence to support the Commissioner's findings. See *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). See *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (quoting *Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs*., 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v.*

*Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutheford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp*., 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' Id. at 87"; parallel and other citations omitted).

        Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final step [five]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled per se because he or she

meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is equivalent to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, *citing Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by

the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v. Barnhart,* 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 and *Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).[12] *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'"). Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); *see also id*. at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)). While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not necessarily require reversal or remand of an ALJ's determination,

---

[12] Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of

impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is equivalent to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and specifically explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli* , 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the

claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g.*, *Carter v. Railroad Retirement Board*, 834 F.2d 62, 65, relying on *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), relying on *Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution

of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green*, 749 F.2d at 1070-71 (emphasis added), *quoted in Mason*, 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan*, 997 F.Supp. 648, 658 (W.D. Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present evidence to refute the claim. *See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan*, 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), cert. denied 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical

records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

Medical Opinions of Treating Sources

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ ALJ "must 'explicitly' weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects." *Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli*, 247 F.3d at 42-43 (although ALJ may

weigh conflicting medical and other evidence, he must give some indication of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed to mention significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including

symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002)[13]. Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they always must be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social

---

[13] Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the treatment relationship," and states:

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion. 20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner[14], these Social Security Rulings require that, because an adjudicator is required to evaluate all evidence in the record that may bear on the determination or decision of disability, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must never be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to re-contact the source for clarification of the reasons for the opinion." *Id*.

---

[14] SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). See note 4, supra. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). *See also* SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

## IV.    Discussion

Plaintiff alleges that  the ALJ erred in two respects: (1) the ALJ incorrectly determined plaintiff's residual functional capacity by not appropriately considering and providing due weight to all the evidence within the record, and (2) the ALJ erroneously determined that plaintiff's reduced intellectual functioning did not satisfy Listing 12.05(C). Defendant argues the ALJ appropriately evaluated the entire record, that substantial evidence supports his residual functional capacity and Listing 12.05(C) determinations, and therefore plaintiff is not disabled under the SSA.

### 1.    Residual Functional Capacity

Plaintiff avers that defendant failed to appropriately consider his subjective complaints, expert medical opinions, his medically assigned GAF scores, as well as objective medical evidence within the record. Defendant responds, asserting that the ALJ gave adequate attention to all the medical evidence within the record and appropriately provided minimal weight to evidence contradicted by other medical evidence within the record; and therefore substantial evidence supports its residual functional capacity determination.

### A.    Medical Opinions and GAF scores

To begin, plaintiff asserts that the ALJ did not provide due weight to Dr. Uran's May 26, 2004, psychological report, in which she diagnosed plaintiff with anxiety and depressive disorders; suffering from back pain, diabetes, and arthritis; having a below average IQ and assigning him a GAF score of 55. R. 238. Plaintiff also argues the ALJ provided insufficient weight to Dr. Uran's May 24, 2005, conclusions in which she administered a WAIS-III test and approximated plaintiff of having a very low intellectual capability; assigned him a GAF score of

50; and recommended he receive social security disability. R. 230-231. Plaintiff further claims that the ALJ erred because he substituted his own opinion for that of Dr. Uran's. In essence, plaintiff argues the ALJ did not appropriately identify medical evidence contradicting Dr. Uran's opinions and findings.

As previously stated, "although a treating physician's opinion is generally entitled to controlling weight, an ALJ can discredit that opinion if it is not supported by medical findings and is inconsistent with other evidence in the record." Also, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the plaintiff is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990). Thus, "a statement by a medical source that you are disabled or unable to work does not mean that you will be determined disabled." *Wright*, 900 F.2d 675 at 683.

It is also not incumbent upon an ALJ to discuss every tidbit of evidence in his opinion. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Thus, an ALJ is not mandated to divulge his GAF score examination. *See Id.* Furthermore, a GAF score is only a small part of the totality of evidence considered and is not treated as dispositive. *See Id.* Though a GAF score should be considered along with all the evidence within the record and may assist in the ALJ's determination of a claimant's residual functional capacity, it is not, however, dispositive. *See* 65 Fed. Reg. 50746-01, 50764-65 (2000); *see e.g.*, *Lopez v. Barnhart*, 78 Fed. Appx. (10th Cir. 2003).

With respect to Dr. Uran's medical opinion from May 26, 2004, the ALJ did not afford her opinion controlling weight because he correctly identified contradictory medical evidence. In

particular, the ALJ agreed with Dr. Link's opinion who reviewed the evidence at the state agency level. Dr Link concluded that the medical evidence established impairments of depression and anxiety, that plaintiff's basic memory processes were intact, stress exacerbates his symptoms, his frustration tolerance is low, he experiences social anxiety and discomfort around strangers, and that he is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments. R 265. However, in reaching this conclusion, as previously stated, Dr. Link found plaintiff's statements and Dr. Uran's opinion only partially credible. He opined that plaintiff's subjective complaints and Dr. Uran's subsequent medical conclusions were inconsistent with the totality of medical evidence and overestimated the severity of plaintiff's functional restrictions. Specifically, Dr. Link concluded that Dr. Uran's opinion regarding plaintiff's ability to make occupational adjustments, performance adjustments, personal and social adjustments, and other work related activities were not consistent with all of the record evidence. Consequently, Dr. Link's conclusions provide sufficient contradictory evidence, upon which the ALJ could assign minimal weight to Dr. Uran's May 24, 2004, medical opinions.

The minimal weight assigned to the WAIS-III test results and Dr. Uran's medical opinions from May 24, 2005, is also supported by sufficient contradictory evidence. Particularly, as noted by the ALJ, the results of the test are inconsistent with plaintiff's cognitive abilities over his life time. There is no evidence of mental retardation during his developmental stages (before age 22); in the absence of special-help classes plaintiff completed high school and received a certificate in auto mechanics through vocational training; the record is devoid of evidence of adaptive functioning deficiencies; plaintiff was gainfully employed for twenty-six years; handles

28

his own finances; and has a commercial driver's license. Dr. Uran's conclusions were also based on brief contact with plaintiff, reflect a deference to plaintiff's subjective complaints, and were inconsistent with Dr. McFadden's treatment notes which did not reflect the same degree of severity. In light of these facts, the ALJ correctly determined that the WAIS-III test and Dr. Uran's medical findings were not entitled to full credibility as they were inconsistent with other objective medical evidence in the record.

While the ALJ did not explicitly discuss the GAF scores, he did examine the medical evidence supporting these scores, as discussed above,[15] and assigned the appropriate evidentiary weight. Therefore, it was not necessary for the ALJ to explicitly discuss the GAF scores, and hence every tidbit of evidence. *See Fargnoli,* 247 F.3d at 42.

B.      Subjective Complaints

Plaintiff further asserts the ALJ should have granted more credence to his testimony. Specifically, plaintiff alleges the ALJ erred by not adequately explaining why he found plaintiff's testimony less than fully credible, and therefore did not provide a foundation for his conclusions. Plaintiff also alleges the ALJ erred by mischaracterizing his ability to engage in daily activities and living.

Plaintiff's first claim of error is premised on the notion that ALJ failed to analyze critical portions of the medical evidence, which establish a more than adequate foundation for plaintiff's testimony. The critical portions of the medical evidence allegedly missed, is the same evidence plaintiff contends should have been given controlling weight, as discussed above. Since this

---

[15] The contradictory objective medical evidence includes Dr. Link's medical findings and the evidence denigrating the credibility of the WAIS-III test results.

Court found that the ALJ sufficiently examined all probative evidence and attached appropriate weight with adequate explanations thereof, it can not then be said that this critical medical evidence corroborates his subjective testimony.

Furthermore, the ALJ noted that plaintiff's testimony was inconsistent with his daily activities. In his disability application, plaintiff claimed he could not engage in any outdoor physical activities. However, on July 13, 2005, plaintiff reported to Dr. McFadden that he was doing better and was able to mow approximately three acres a week. Dr. McFadden attributed plaintiff's improvements to Gabitril, an antidepressant drug. Thus, Dr. McFadden's treatment notes demonstrate that the appropriate medication can control plaintiff's symptoms and enable him to engage in physical activities. Moreover, the severity alleged by plaintiff is inconsistent with the conservative treatment received in response to his physical and mental ailments. Dr. Link also opined that plaintiff's subjective complaints were inconsistent with the totality of evidence. Furthermore, after being terminated, plaintiff filed a grievance to be reinstated to his employment position. According to Dr. Mcfadden's treatment notes, plaintiff pursued this action until July 2005. By pursuing reinstatement, plaintiff implicitly demonstrated an ability to work. Thus, it was reasonable for the ALJ to conclude that plaintiff's employment related action was inconsistent with his present claim that he was disabled through that time and was unable to work. This conclusion is also supported by the inconsistencies pertaining to plaintiff's daily activities. Therefore, there is substantial evidence to support the ALJ's determination that plaintiff's testimony did not deserve full credibility.

Next, plaintiff asserts the ALJ mischaracterized his true capabilities and therefore erred with respect to the credibility assigned to his subjective complaints. The ALJ listed living

activities performed by plaintiff which he considered the type of activities not performed by a person suffering from total disability. These activities include: plaintiff lives in his house with his wife, performs normal household chores to the extent permitted by his physical problems, is independent in his personal care, pays his own bills, and drives a car. Plaintiff contends this is a mischaracterization on the grounds that he can only perform these activities at a slow pace for short periods of time and is incapable of performing them when he is experiencing increased symptoms arising from his conditions. The ALJ however, specifically states that plaintiff engages in certain activities to the *"extent permitted by his physical ailments*." R.28. This particular language connotes a capability to the degree expressed by plaintiff. Therefore, this Court does not find that the ALJ mischaracterized the facts. In addition, Dr. Link concluded that plaintiff had only mild limitations in his daily living activities and considered plaintiff's subjective complaints only partially credible. Consequently, substantial evidence supports the ALJ's determination that plaintiff's allegations regarding the intensity, duration and limiting effects of his symptoms were not entirely credible.

In summary, the ALJ sufficiently evaluated all medical evidence within the record and adequately supported the minimal weight attached Dr. Uran's medical opinions and findings, and plaintiff's subjective complaints with contradictory objective medical evidence. Therefore, the ALJ did not substitute his opinion for that of treating physicians and medical evidence, and substantial evidence supports the ALJ's residual functional capacity determination.

2. Listing 12.05(c) Mental Retardation

Plaintiff also contends the ALJ erred in determining that be was not mentally retarded within the criteria of Listing 12.05(C), and was therefore not disabled *per se.* Defendant asserts

that substantial evidence supports the ALJ's Listing 12.05(C) determination.

A claimant is disabled *per se* and entitled to disability if he or she suffers from an impairment listed in, or equal to a list of impairments set out in the regulations of 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Williams v. Sullivan*, 970 F.2d 1178, 1183 (3d Cir. 1992). Plaintiff asserts that he meets the listed criteria for mentally retarded persons under § 12.05(C).

In pertinent part, § 12.05 provides:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.
20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Put another way, to satisfy § 12.05(C) a claimant must: (1) have a valid verbal, performance or full scale IQ of 60 through 70, (2) a physical or other mental impairment imposing additional and significant work-related limitations of function, or (3) show that the mental retardation was initially manifested during the developmental period (before 22). *See Id.*

Plaintiff bears the burden of proving his impairment is of a listing-level severity, and that he meets all the listing requirements. *Brown v. Yuckert*, 482 U.S. 136, 146 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Thus, an ALJ may determine that an IQ score of the requisite level does not satisfy § 12.05© if there is sufficient contradictory evidence in the record. *Markle*, 324 F.3d at 187, *see also Clark v. Apfel,* 141 F.3d 1253, 1256 (8th Cir. 1998) (holding the ALJ

properly rejected claimant's IQ score where claimant's work history, education, and daily activities were inconsistent with a low IQ score); *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (same) . An ALJ, however, "cannot reject IQ scores based on personal observations of the claimant and speculative inferences drawn from the record." *Morales v. Apfel*, 225 F.3d 310, 318 (3d. Cir. 2000).

To satisfy the first portion of § 12.05, plaintiff presented his WAIS III test scores ("IQ score"). However, as in *Clark* and *Popp*, the ALJ concluded that plaintiff did satisfy Listing § 12.05(C) because his IQ score was inconsistent with evidence in the record. In this case, the ALJ noted that plaintiff was able to complete high school and a vocational program in the absence of special help, his twenty six years of employment as a semi-skilled worker with some supervisory responsibilities, his ability to obtain a commercial driver's license, handle his finances, and read the newspaper. R. 12, 84-84, 88-89, 339-341, 343. In light of plaintiff's education, work experience, and daily activities, it was reasonable for the ALJ to conclude that plaintiff's IQ score was not consistent with the record evidence, and that plaintiff did not satisfy the first requirement of part C of § 12.05. Since plaintiff does not meet or equal the criteria of § 12.05, he is not disabled *per se.* As a result of the foregoing, the ALJ's § 12.05(C) determination is supported by substantial evidence.

### V.     Conclusion

The Court has reviewed the ALJ's findings of fact and conclusions, and determines that substantial evidence supports the ALJ's findings, for the reasons set forth above. Accordingly, the Court will deny plaintiff's motion for summary judgment and grant defendant's cross motion for summary judgment.

An appropriate order will follow.

s/ Arthur J. Schwab_____
Arthur J. Schwab
United States District Judge

cc:     All Registered ECF Counsel and Parties